as attorney's fee, it was said by SHARSWOOD, C. J. : " It does not appear by the paper-books that there was in this case any rule for judgment for want of an affidavit of defense, though it does appear that there was no other defense than the amount of the collection fee. Had there been such a rule, the court should have decided the question, and not have sent the case to the jury. We think the learned judge below was right in refusing to leave it to the jury to determine the rate of commission, but he was wrong in instructing them to find the full amount agreed upon. Five per cent. upon $14,000, in other words $700, was far beyond what was reasonable, even in view of the fact that the defendant below had interposed a defense against the commission, and that the case might be carried by writ of error to this court. We think, even under these circumstances, two per cent. would have been an ample and liberal allowance, and the jury should have been so instructed. In general, this court will not review the exercise of a sound discretion by an inferior court upon such a question, and the presumption will always be in favor of their decision unless it is plainly excessive, or, as appears to have been the case here, founded on the mistaken idea that they had no equitable power to interpose and moderate the agreed amount." Here there was no trial, and, as the sum tendered the appellant for counsel fees was reasonable compensation for professional services rendered up to the time the tender was made, we must modify the judgment accordingly by reducing it from $8,806 to $8,436.67, with interest from July 22, 1907. As so modified it is affirmed.

---

## Burnett's Estate.

219    599
225    632
40SC   40

*Parent and child—Adoption—Inheritance—Intestate laws—Acts of May 4, 1855, P. L. 430, April 13, 1887, P. L. 53, and May 19, 1887, P. L. 125.*

An adopted child, under the laws of Pennsylvania, cannot inherit from collateral kindred of the adopting parents.

Argued Nov. 8, 1907. Appeal, No. 155, Oct. T., 1907, by Clara Burnett, from decree of O. C. Allegheny Co., April T.,

1907, No. 100, overruling exceptions to adjudication in Estate of Martin H. Burnett. Before FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Exceptions to adjudication.

OVER, J., filed the following adjudication :

Martin H. Burnett died intestate November 22, 1905, leaving to survive him one brother, one sister, and children of a deceased brother.

Elias Burnett, another brother, a resident of the state of Ohio, died before the decedent, leaving no issue; he, however, had adopted under the laws of that state as his son, one John Ferguson, a minor, whose guardian claims that he is entitled to share in the distribution of the estate under our intestate laws and statutes relating to adoption. Under the latter, however, an adopted child "has the rights of a child without being a child" and can inherit from the adopting parent: Schafer v. Eneu, 54 Pa. 304.

This decedent having left a brother and sister, and a nephew and niece, children of a deceased brother and sister, the estate is to be distributed under sec. 3 of the act of April 8, 1833, which provides that:

"If such intestate shall leave brothers or sisters, . . . . and also nephews and nieces, being children of such deceased brother or sister, . . . . every such brother and sister shall receive such share as he or she would have received if all the brothers and sisters who shall then be dead, leaving children, had been living at the death of the intestate, and such nephews and nieces shall take by representations of their parents respectively, such share only as would have descended to such parents if they had been living at the death of the intestate."

The parents referred to here are not the adopted but the natural parents, and as this claimant is not a child of the intestate's deceased brother, nor intestate's nephew, it follows that he is not entitled to distribution.

On exceptions, OVER, J., filed the following opinion :

The claimant and Elias Burnett were residents of the state of Ohio, and the former was adopted by the latter under the

laws of that state. As both were domiciled there and the adoption is not repugnant to the jurisprudence of this state, it seems to be valid here: Foster v. Waterman, 124 Mass. 592; Wharton's Conflict of Laws, sec. 251; but the adopted child can only inherit in this state under our laws of descent: Smith v. Derr's Administrators, 34 Pa. 127. As he is not of the blood of this intestate, he cannot inherit from him under the intestate act of 1833; but it is contended that under the statute providing for the adoption of children, he can. The seventh section of the act of May 4, 1855, which was amended by the act of May 19, 1887, Stewart's Purdon, page 279, pl. 1, only as to the necessary parties to the adoption proceedings, provided that an adopted child should "have all the rights of a child and heir of such adopting parent." It does not, however, give such a child the rights of a nephew or niece, and of a collateral heir of the brothers and sisters of the adopting parent; and if it had been the intention to change the intestate acts so that intestate's estate should descend without his consent to a person not of his blood, surely such an intention would have been clearly expressed. It is suggested that if the adopted child has all the rights of a child, it necessarily has the rights of inheritance, as a natural child of the adopting parents. If so the child could inherit as such from the natural children, and it would not have been necessary to provide in the concluding part of the section that the adopted child and other children of the adopting parent should "inherit from and through each other as if all had been the lawful children of the same parent." The obvious purpose of the act was to provide for the adoption of children, and to amend the intestate laws only so that the adopted child could inherit from the adopting parent and his children.

The only other Act relating to the matter is that of April 13, 1887, P. L. 53, Stewart's Purdon, 2006, pl. 60. This act gives the inheritance of the estate of an adopted child to the adoption parent and their lawful heirs and kindred, to the exclusion of the natural parent, kindred and heirs at law of the child, reserving, however, to the husband and wife of the child their rights under the intestate laws, "provided, however, that this Act shall only apply to such property as the adopted child shall have inherited or derived from the adopting parent of

their kindred." At first blush it seems that the right of the child to inherit from the adopting parents' collaterals was recognized by the proviso; but this right did not exist when the act was passed, and in construing it, the word "derived" should follow "or," so that it would read "or derived from their kindred." Under the act of 1855, the adopting parent could not inherit from the child: Commonwealth v. Powel, 16 W. N. C. 297; and the purpose of the act was to give such a parent and his kindred the right of inheritance as to any estate the child inherited or derived from them, and under the act they seem to have a prior right to the adopted child's issue.

The exceptions to the adjudication must be dismissed.

*Error assigned* was the decree of the court.

*Stephen Stone*, with him *Wm. M. Roach* and *Wm. A. Stone*, for appellant.—The apparent intention of the legislature and of the courts since the passage of the adoption acts, has been to extend to an adopted child all the rights, privileges and duties of a natural child: Schafer v. Eneu, 54 Pa. 304; Kohler's Est., 199 Pa. 455; Rowan's Est., 132 Pa. 299; Morgan v. Reel, 213 Pa. 81.

*Jas. W. Collins*, for appellee, cited: Ross v. Ross, 129 Mass. 243; Quigley v. Mitchell, 41 Ohio, 375; Upson v. Noble, 35 Ohio Rep. 655.

PER CURIAM, January 6, 1908:

The decree is affirmed on the opinion of the learned judge of the orphans' court.

---

# Muscrelli *v.* Mercantile Trust Company, Appellant.

*Contract—Municipal contract—Rejected material—Title to property.*

Where a city contract provides that materials shall be subject to approval by the director of public works, and certain material furnished by a subcontractor is rejected, and subsequently sold at a sheriff's sale, but allowed by the purchaser to remain on the premises, a surety