## Clarkson Trust

*Robert J. Dodds, Jr.* and *Robert G. Lovett*, for accountant.

*Harbaugh Miller*, for adopted children.

*John G. Frazer, Jr.*, for natural child.

McKENNA, *P. J.*, July 9, 1974—This case is before us on questions raised at the audit of Mellon Bank's first and final account as trustee of deed of trust of Edward R. Clarkson, dated December 28, 1939, for Margaret Clarkson McQueen. The audit was held on March 20, 1974. The questions relate to the rights of adopted children.

Prior to November 17, 1972, it was the law of this Commonwealth that when a testator or a donor designated as his beneficiaries "children" of a life tenant, the term did not include adopted children. See Holton Est., 399 Pa. 241 (1960); Fownes Trust, 421 Pa. 476 (1966). In Tafel Est., 449 Pa. 442 (1972), the Supreme Court reversed that rule and placed adopted children on an equal footing with natural-born children. We are called on to apply that rule in this case.

The parties have filed a stipulation as to the facts.

On December 28, 1939, Edward R. Clarkson executed a deed of trust for the benefit of his four children, William R. Clarkson, Eleanor M. Clarkson, Nancy J. Clarkson and Margaret J. Clarkson, now McQueen. Mellon Bank, N.A. is the successor trustee under the deed of trust. We are here concerned only with the trust for Margaret Clarkson McQueen.

The deed of trust provides in article I that the trustee shall hold one-fourth of the trust estate for Margaret J. Clarkson, daughter of settlor, and shall pay to her the income therefrom for her life. On her death, the trustee is directed to pay said one-fourth of the principal of the trust estate to her issue as she shall appoint, and in default of her exercise of said power of appointment, then to the issue of the said Margaret J. Clarkson living at the time of her death, in equal shares, per stirpes.

Article II of the deed provides that in the event any beneficiary is a minor at the time he or she becomes entitled to receive a share in the principal of the trust estate, his or her share shall be held in trust by the trustee until the beneficiary becomes of age.

On December 5, 1946, by decree of the Orphans' Court of Allegheny County, at no. 5754 of 1946, David Scott McQueen, who was born April 2, 1945, became the adopted child of Alexander Scott McQueen, Jr. and Margaret Clarkson McQueen; and on May 26, 1949, by decree of the Orphans' Court of Allegheny County, at no. 1942 of 1949, Robert Clarkson McQueen, who was born June 10, 1947, became the adopted child of Alexander Scott McQueen, Jr. and Margaret Clarkson McQueen.

On February 2, 1952, Edward R. Clarkson, the settlor, died, leaving a last will and testament dated December 30, 1949, which was probated in the Office of the Register of Wills of Allegheny County, Pa., on March 12, 1952, and is of record there at No. 1288 of 1952. In article II(D) of said will, the testator, in setting forth the distribution provisions of his residuary estate, provided that adopted children should share equally with natural children, in the following language:

". . . and provided, further, that any legally adopted grandchildren and great-grandchildren shall take, share and share alike . . ., with any natural grandchildren or great-grandchildren of mine."

On July 3, 1953, Margaret Maud McQueen, the natural child of Alexander Scott McQueen, Jr. and Margaret Clarkson McQueen, was born.

On July 3, 1961, Margaret Clarkson McQueen died, intestate, leaving to survive her, her husband,

Alexander Scott McQueen, Jr., and her three children, Margaret Maud McQueen, David Scott McQueen, and Robert Clarkson McQueen.

Subsequent to the death of Margaret Clarkson McQueen, the trustee revalued the securities and cash held in said deed of trust, and on August 16, 1961, placed an amount equal to one-fourth of those assets representing Margaret Clarkson McQueen's share of said trust, in a separate trust account for Margaret Maud McQueen. Since that time, the trustee has administered the trust estate of such separate trust account, which is the subject of this first and final account as filed, in accordance with the provisions of article II of the deed of trust.

The question presented to us is whether or not the two adopted children are entitled to share in the one-quarter of the principal of the trust established by Edward R. Clarkson for his daughter, Margaret J.

The trust deed was made in 1939. In 1949, after his daughter had adopted two children, Edward R. Clarkson made his will wherein he expressly provided that his daughter's adopted children would share in his testamentary estate. It may be argued that this is evidence of his intent that adopted children were to share in property disposed of by the deed of trust. It may be argued with equal force that Mr. Clarkson deliberately omitted any reference to adopted children in the deed. Therefore, this fact is irrelevant to our discussion.

Initially, we note that settlor in this case used the word "issue" when referring to children of his daughter. In some cases hereinafter cited, the term "children" is used. We find that in the following discussion, we may equate the two terms. See Tafel Estate, supra. We also find that it is immaterial

whether the instrument conveying the beneficial interest is a will or a deed.

There has been no prior adjudication in this case, so we are not here concerned with the problems of "res judicata" or "collateral estoppel," as we were in Fownes Trust, 23 Fiduc. Rep. 517 (1973), and 24 Fiduc. Rep. 57 (1973) (en banc).

In Murdoch Trust, 23 Fiduc. Rep. 227 (1973), the facts were as follows: On October 26, 1929, James B. Murdoch entered into an irrevocable trust agreement for the benefit of himself for life, and thereafter, for his two daughters for their respective lives. On the deaths of the daughters, the principal of the estate was to be paid to the issue of said daughters, and:

"Should said deceased daughter die leaving no lawful issue surviving at the time of her death, then the trust fund shall be kept entire and the entire income therefrom be paid to the surviving daughter for and during her natural life. At the death of the surviving daughter the entire corpus of the trust fund shall be paid to her lawful issue."

Virginia Murdoch Davis, one of the donor's daughters, died on March 5, 1971, survived by an adopted son, Murdoch Davis. The trustee filed an account, which came before the court for audit on November 22, 1972. The court held that Murdoch Davis was not entitled to share in the trust estate. On appeal, the court en banc (Boyle, Rahauser and McKenna, *JJ.*), reversed, holding that Tafel applied to the case. Judge Boyle dissented. The majority held that the terms "issue" and "children" must be equated so that when the Supreme Court held in Tafel that the term "children" includes adopted children, the use of the word "issue" in Murdoch

must also include them. The court noted that the Tafel decision was handed down on November 17, 1972, five days before the decree of distribution in this case, and therefore, was applicable. The court did not discuss the question as to whether or not, on the death of Virginia Murdoch Davis, her share of the trust vested in her surviving sister and issue of the sister.

In McCune Trust, 24 Fiduc. Rep. 252 (1974), this court held in an opinion filed on April 11, 1974, that adopted children did not share in income received or accrued prior to November 17, 1972, the date of the Tafel decision. In that case, the trust deed provided that certain excess income was to be paid to donor's grandchildren. One of the donor's sons had four adopted children. The trustee filed an account after November 17, 1972. Prior to that time, the trustee had distributed the surplus income to the natural-born grandchildren. We held that the adopted grandchildren were entitled to share in the surplus income received or accrued subsequent to November of 1972, but that they had no rights in income received or accrued prior to that date. We held that the Tafel opinion applied only prospectively.

In this case, the chronology is as follows: The trust instrument was executed in 1939 for the benefit of donor's children and their issue. Margaret Clarkson McQueen, one of his children, died in 1961, survived by one natural child and two adopted children. The trustee set aside the share of the deceased child of donor in a separate trust for her natural child. This child was a minor, and accordingly, the estate was not delivered to her, but was held in trust. Tafel was decided in 1972. The account in the case at bar was filed and came before

the court for audit in 1974. At the audit, counsel for the adopted children claimed an equal share in the trust estate of their adoptive mother, Margaret Clarkson McQueen. Counsel for her only natural child, Margaret Maud McQueen, denies their claim.

The case is not free from difficulty, but it is our opinion that the natural child takes to the exclusion of her adopted brothers.

In 1961, when Margaret Clarkson McQueen died, the law was clear that an adopted child did not take as "issue" of a life tenant where the testator or donor designated issue of the life tenant as the remainderman: Howlett Est., 366 Pa. 293 (1951); Collins Est., 393 Pa. 195 (1958); and Storb Ap., 400 Pa. 567 (1960). The trustee considered the question as to the disposition of Mrs. McQueen's share and determined that it belonged to her natural child. Since she was a minor, the share was retained in trust. In our opinion, this constituted a vesting of the asset in Margaret Maud McQueen. It was then hers, just as much as if the trustee had filed an account and the court had awarded it to her; and equally so as if she had been an adult and the trustee had paid it over to her on her receipt.

In our opinion in McCune, supra, we held that Tafel operated only prospectively. We apply the same rule here.

Prior to Tafel, adopted children were excluded from bequests to the issue of a life tenant. This was the law in 1961 when Mrs. McQueen died. Her natural daughter took the remainder to the exclusion of her adopted brothers. This was accepted at the time. It would be unfair to the natural child to ask her to relinquish two-thirds of the share. This would be a detriment to her and a windfall to the

adopted children. Citizens of this State are justified in relying on the law as promulgated by the Supreme Court. It is not necessary to secure an adjudication in each particular estate before pursuing a course of action which does not otherwise require court approval.

In denying shares to the adopted children, we are not following a principle which has been proved erroneous. We are recognizing an act of the trustee which was based on a decision of the Supreme Court. Since that decision was rendered, the law has evolved, or the philosophy of the courts with respect to adopted children has changed. We are not, however, required by that change to reallocate rights in property which were awarded under the law as it existed before the change.

We have indicated above that there probably had been "reliance" by Margaret Maud McQueen on the rule which gave to her the entire share of her mother. There is nothing in the record to show either reliance or nonreliance, but it stands to reason that the natural child assumed she was possessed of one-quarter and not one-twelfth (one-third of one-quarter) of the donor's estate, and that she planned her life accordingly. It would not be fair now to deprive her of two-thirds of her share.

We have considered two law review articles on the question of the problem presented to us. In an essay in 35 Ill. L.R. 121 (1941), Retrospective Operation of Overruling Decisions, by Orvill C. Snyder, it is suggested that courts should boldly overrule decisions found to be unsatisfactory at the time and have them operate in futuro without concern for past transactions.

In Stare Decisis and Rules of Construction in Wills and Trusts, 52 Cal. L.R. 921 (1964), by Ed-

■■ ■■

ward C. Halbach, Jr., a contrary theme is adopted. This author believes that overruling decisions should be applied retrospectively, and that the problem of "reliance" is a myth. We prefer the former approach.

A decree will be entered in accordance with this opinion.